**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | | |
|---|---|---|
| PAUL FARAH, | ) | Case No. 5:13-cv-01127-PSG |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING DEFENDANTS'** |
| v. | ) | **MOTION TO DISMISS** |
| | ) | |
| WELLS FARGO HOME MORTGAGE and | ) | **(Re: Docket No. 49)** |
| U.S. BANK NATIONAL ASOCIATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

In this foreclosure-related action, Defendants Wells Fargo Home Mortgage and U.S. Bank National Association move to dismiss Plaintiff Paul Farah's fourth amended complaint.[1] Farah did not file an opposition. On this basis alone, the court could consider the motion unopposed. But in light of Farah's pro se status and his appearance at the hearing, the court will proceed to address the motion's merits. Having considered those merits, the court GRANTS Defendants' motion.

---

[1] *See* Docket No. 49.

# I. BACKGROUND

The court reviews the factual background of this case laid out in its prior order.[2]

## A.    Factual Background

Farah and Wells Fargo executed a Deed of Trust that was recorded on August 5, 2005.[3]  In 2009 Farah unsuccessfully sought a loan modification "while experiencing hardship and reduction in income."[4]  Farah tried to sell the house "conventionally" in 2010.[5]  At an indeterminate time Farah first disclosed to Wells Fargo his intent to short sell the property, in part, to protect his credit rating.[6]  Farah believed he had reached an understanding with Wells Fargo that any scheduled foreclosure sale would be delayed while Wells Fargo evaluated the short sale offers submitted by Farah.[7]  Farah claims he had a backup plan to avoid foreclosure on his property – access to his retirement funds – that he planned to tap in the event Wells Fargo rejected the short sale offers he submitted.[8]

In late April 2012 Farah submitted a short sale for Wells Fargo's review.[9]  Farah's real estate agent "discovered in late May that Wells Fargo was not planning to postpone the sale and alerted Farah of her findings."[10]  "On May 31, 2012, Farah placed several calls to Wells Fargo" to

---

[2] *See* Docket No. 45.

[3] The court draws the following facts, taken as true for the purposes of this motion to dismiss, from the fourth amended complaint.  *See* Docket No. 48 at 4.

[4] *Id.*

[5] *Id.*

[6] *See id.*

[7] *See id.*

[8] *See id.*

[9] *See id.*

[10] *Id.* at 6.

Case No. 5:13-cv-01127-PSG
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

inquire about the short sale proposal and possibly postpone the pending foreclosure proceedings.[11]

Farah "spoke with multiple Wells Fargo employees," including one customer service

representative, Jessica, who assured Farah that the "short sale offer and sale postponement request"

were both in process.[12]   At bottom, Farah claims he got the "runaround" from Wells Fargo

employees who conspired to withhold information, making him believe that Wells Fargo would be

postponing the sale so it could continue to process the offer.[13]   Wells Fargo "executed on their

intended [foreclosure] sale the next day (June 1, 2012)."[14]

**B.     Procedural History**

On March 13, 2013, Farah responded with this suit alleging fraudulent and deceptive

business practices.[15]   Farah amended his complaint the next day.[16]   Without apparent objection, on

June 11, 2013, Farah again amended his complaint[17] and on June 20, 2013, he amended the

complaint a third time.[18]   The court granted Defendants' motion to dismiss, but offered Farah leave

to submit an amended complaint.[19]   Farah submitted a belated fourth amended complaint that is

---

[11] *Id.*

[12] *Id.*

[13] *Id.* at 17 ("Farah was never provided with the critical information that he was entitled to have that evening and was instead fooled by Wells Customer Service Representatives whom he spoke with, who all gave him the runaround and fooled him into thinking that the sale postponement 'could' come through and that it was only a matter of time for Ms. Gaiter to call and confirm; unbeknownst to Farah at the time, this act by Jessica, Alton and A jay was just the cover-up piece of a plan being executed by Wells Fargo employees, who all conspired to withhold information in order to blindside him with their actions.").

[14] *Id.*

[15] *See* Docket No. 1.

[16] *See* Docket No. 5.

[17] *See* Docket No. 22.

[18] *See* Docket No. 27.

[19] *See* Docket No. 45.

3

Case No. 5:13-cv-01127-PSG
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

**United States District Court**
For the Northern District of California

largely duplicative of its prior complaint.[20]  Defendants again move to dismiss the operative

complaint.[21]  The operative complaint alleges (1) fraud; (2) breach of contract; (3) breach of good

faith, fiduciary duty and fair dealing; and (4) unlawful transfer of title and possession.[22]  Farah

seeks (1) rescission, (2) quiet title, (3) money damages, and (4) credit file corrections.[23]

## II. LEGAL STANDARDS

### A.    Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader

is entitled to relief."[24]  When a plaintiff fails to proffer "enough facts to state a claim to relief that is

plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief

may be granted.[25]  A claim is facially plausible "when the pleaded factual content allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."[26]  Under

Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the

absence of sufficient facts alleged under a cognizable legal theory."[27]  Dismissal without leave to

amend is appropriate if it is clear that the complaint could not be saved by amendment.[28]

### B.    Fed. R. Civ. P. 9(b)

"A party must state with particularity the circumstances constituting fraud or mistake,"

which requires "statements regarding the time, place, and nature of the alleged fraudulent

---

[20] *See* Docket No. 48.

[21] See Docket No. 49.

[22] *See* Docket No. 48 at 7-9.

[23] *See* Docket No. 48 at 13.

[24] Fed. R. Civ. P. 8(a)(2).

[25] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[27] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[28] *See Eminence Capital, LLC v. Asopeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

4

Case No. 5:13-cv-01127-PSG
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

activities" under Rule 9(b).[29]   "Mere conclusory allegations of fraud are insufficient."[30]   To satisfy

the heightened standard under Rule 9(b), allegations must be "specific enough to give defendants

notice of the particular misconduct which is alleged to constitute the fraud charged so that they can

defend against the charge and not just deny that they have done anything wrong."[31]   This includes

"the who, what, when, where, and how of the misconduct charged."[32]   Plaintiff must also allege

what is false or misleading about a statement, and why it is false."[33]   "A court may dismiss a claim

grounded in fraud when its allegations fail to satisfy [Rule] 9(b)'s heightened pleading

requirements."[34]

## C.   Rescission

   "Under California law, in an action to set aside a trustee's sale, a plaintiff must

demonstrate that he has made a 'valid and viable tender [offer] of payment of the indebtedness.'"[35]

The tender rule requires a plaintiff to (1) "demonstrate a willingness to pay" and (2) "show the

ability to pay."[36]   "The rationale behind the rules is that if [the borrower] could not have redeemed

the property had the sale procedures been proper, any irregularities in the sale did not result in

damages to the [borrower]."[37]   Tender is a requirement in a quiet title action as well as in any

---

[29] *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994).

[30] *Id.*

[31] *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

[32] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

[33] *GlenFed*, 42 F.3d at 1548.

[34] *Saldate v. Wilshire Credit Corp.*, 686 F. Supp. 2d 1051, 1064 (E.D. Cal. 2010).

[35] *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1183-84 (N.D. Cal. 2009) (*quoting Karlsen v. Am. Sav. & Loan Ass'n*, 158 Cal. App. 3d 575, 578 (1971)).

[36] *Id.* (*quoting In re Worcester*, 811 F.2d 1224, 1231 (9th Cir. 1987)).

[37] *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 112 (2011).

Case No. 5:13-cv-01127-PSG
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

action to set aside a trustee sale.[38]  Further, the borrower must offer to pay the full amount of the debt for which the property was a security.[39]

Tender is not required where (1) "the borrower's action attacks the validity of the underlying debt" since "it would constitute an affirmation of the debt"; (2) "the person who seeks to set aside the trustee's sale has a counter-claim or set-off against the beneficiary"; (3) "it would be inequitable to impose such a condition on the party challenging the sale"; or (4) "the trustor is not required to rely on equity to attack the deed because the trustee's deed is void on its face."[40]

### III. DISCUSSION

**A.    The Tender Rule**

Defendants challenge the entire fourth amended complaint because it fails to allege a valid tender.[41]  Under ordinary circumstances a debtor is required to allege a valid tender as a precondition of challenging a foreclosure sale.[42]  The complaint alleges that Farah was prepared to cure the default, if Wells Fargo denied his short sale offer.  On its face Farah's complaint does not allege that he tendered the outstanding debt on the loan.  Farah's related allegations further do not establish that any recognized exception to the tender rule applies, for example, that he is

---

[38] *See Sowinski v. Wells Fargo Bank, N.A.*, Case No. 3:11-6431-SC, 2012 WL 5904711, at *2 (N.D. Cal. Nov. 26, 2012).

[39]  *See Abdallah v. United Sav. Bank,* 43 Cal. App. 4th 1101, 1109 (1996).

[40] *Id.* (describing exceptions to the tender requirement).

[41] *See* Docket No. 49 at 5 ("Under California law, a plaintiff challenging a foreclosure sale under any cause of action or theory must tender the amount received under the loan. . . . Simply stated, Plaintiff cannot challenge the foreclosure sale and quiet title to the property without paying or tendering what he borrowed.").

[42] *See Sierra-Bay Fed. Land Bank Assn. v. Superior Court*, 227 Cal. App. 3d 318, 337 (1991) (the "debtor must offer to do equity by making a tender or otherwise offering to pay his debt"); *Alicea v. GE Money Bank*, Case No. 4:09-cv-00091-SBA, 2009 WL 2136969, at *3 (N.D. Cal. July 16, 2009) ("When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for wrongful foreclosure.").

Case No. 5:13-cv-01127-PSG
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

challenging the validity of underlying debt,[43] that he has an offset against a creditor,[44] or that the foreclosure sale was void.[45]   The final exception, inequity, is generally invoked only when the sale at issue has yet to occur.[46]   Here, the sale already occurred.   The equities in this case do not favor evicting the home's new residents and unwinding the foreclosure sale would be an "idle task" as the home would be subject to foreclosure again absent Farah's tendering the outstanding debt.   In sum, the operative complaint does not adequately plead tender as required to challenge the foreclosure sale and quiet title to the property.

In its prior order the court declined to adopt a per se rule that a plaintiff challenging a foreclosure sale without satisfying the tender rule is automatically be barred from challenging all claims related to the sale, but suggested a more nuanced approach was warranted.[47]   The court held that at a minimum Farah's claim for unlawful transfer of title and possession to be implicated.[48] With a second look at the claims recopied into the amended complaint, the court appreciates that

---

[43] *Soares v. ReconTrust Co., N.A.*, Case No. 3:12-cv-00070-SC, 2012 WL 1901234, at *11 (N.D. Cal. May 25, 2012) (*quoting Lona*, 202 Cal. App. 4th at 112 (the "tender rule does not apply where the borrower's action attacks the validity of the underlying debt")).

[44] *See Ward v. Pickett*, Case No. 4:13-cv-01735-DMR, 2013 WL 5496549, at *11 (N.D. Cal. Oct. 3, 2013) (*quoting Lona*, 202 Cal. App. 4th at 112-13 (the tender rule does not apply "when the person who seeks to set aside the trustee's sale has a counter-claim or set-off")).

[45] *See Tamburri v. Suntrust Mortgage, Inc.*, Case No. 3:11-cv-02899-EMC, 2011 WL 6294472, at *4 (N.D. Cal. Dec. 15, 2011) (*quoting* Miller & Starr California Real Estate 3d § 10:212 ("When the sale is totally void, a tender usually is not required.")).

[46] *See Nissim v. Wells Fargo Bank, N.A.*, Case No. 4:12-cv-01201-CW, 2013 WL 192903, at *9 (N.D. Cal. Jan. 17, 2013) (*quoting Chan Tang v. Bank of Am., N.A.*, Case No. 11-cv-2048-DOC, 2012 WL 960373, at *5 (C.D. Cal. Mar. 19, 2012) (noting that where plaintiff seeks equitable relief to postpone or prevent the sale, many "courts have refused to extend the tender rule to cases where the foreclosure sale has not yet occurred")); *see also Robinson v. Bank of America*, Case No. 5:12-cv-00494-RMW, 2012 WL 1932842, at *3-4 (N.D. Cal. May 29, 2012); *Bowe v. American Mortg. Network, Inc.*, Case No. 11-cv-08381-DDP-SHX, 2012 WL 2071759, at *3 (C.D. Cal. June 8, 2012); *Giannini v. American Home Mortg. Servicing, Inc.*, Case No. 3:11-cv-04489-TEH, 2012 WL 298254, at *2-3 (N.D. Cal. Feb. 1, 2012); *Tamburri*, 2011 WL 6294472, * 3; *Sacchi v. Mortgage Electronic Registration Systems, Inc.*, Case No. 11-cv-1658-AHM-CWX, 2011 WL 2533029, at *1 (C.D. Cal. June 24, 2011).

[47] *See* Docket No. 45 at 7.

[48] *See id.*

7

Case No. 5:13-cv-01127-PSG
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
For the Northern District of California

1  two more of Farah's claims (1) breach of contract and (2) breach of good faith, fiduciary duty, and

2  fair dealing spring from the broader challenge lobbed at Defendants' foreclosure sale.  The

3  equitable relief sought by Farah on the basis of those claims – that the foreclosure sale be set aside

4  – implicate the tender rule.  The court therefore finds that each of those claims fails on that basis

5  alone.  Nonetheless, the court believes a claim-by-claim evaluation of Farah's claims is warranted.

6  **B.      Unlawful Transfer of Title and Possession of Property Against Wells Fargo and U.S.**
7  **         Bank**

8           Although Farah alleges title to the disputed property was fraudulently procured, the

9  amended complaint still does not sufficiently identify any defect in the foreclosure proceedings.

10 Thus, the complaint fails to allege facts upon which relief can be granted.  And as discussed above,

11 the amended complaint also does not allege a valid tender or that an exception to the tender rule

12 applies.  Because the court is convinced that amendment to this claim would be futile, this claim is

13 DISMISSED with prejudice.

14 **C.      Fraud**

15          Farah alleges that Wells Fargo employees withheld information regarding the status of the

16 short sale proposal that he submitted to Wells Fargo for its review.  Wells Fargo "concealed

17 material information" that they knew "was false or ignored its truth as they did not want him to

18 exercise his legal rights and options available to him" which led to Farah's detriment and injury.[49]

19          At bottom though, Farah has not identified a fraudulent misrepresentation made by an

20 employee of Wells Fargo with an affirmative duty to disclose the information.  That Farah called

21 Wells Fargo on the eve of the foreclosure of his home and was unable to reach the employee

22 responsible for the potential short sale of his home does not amount to a fraudulent

23 misrepresentation necessary to state a fraud claim pursuant to Rule 9(b).  Because the court

---

[49] Docket No. 48 at 10.

Case No. 5:13-cv-01127-PSG
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

believes Farah's fraud-based claim is undercut by this foundational flaw, Farah's fraud claim is

DISMISSED with prejudice.

**D.     Breach of Contract**

The amended complaint alleges Farah "was preempted by Wells Fargo from implementing

his mitigation strategy to his detriment and was not allowed to act as he entered into the short sale

contract with the security of a backup plan to change his position if necessary" to avoid

foreclosure.[50] Farah argues he entered a binding contract with Wells Fargo that was breached

when Wells Fargo sold the property through foreclosure proceedings.[51]

"Under California law, the elements of a breach of contract claim are: (1) the existence of a

contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and

(4) resulting damage to plaintiff."[52] It is "well settled that 'if an 'essential element' of a promise is

reserved for the future agreement of both parties, the promise gives rise to no legal obligation until

such future agreement is made.'"[53] Here, it is undisputed that the terms of the short sale were

essential to the contract.  The amended complaint does not allege that the parties agreed to terms of

the proposed short sale, just that Wells Fargo would consider Farah's proposal.  On that basis, the

court finds Farah and Wells Fargo did not enter a binding contract.

Moreover, as outlined above, Farah did not satisfy the tender rule in this case.  Allegations

amounting to a breach of an implied contract to accept a short sale are insufficient to sidestep the

---

[50] Docket No. 48 at11.

[51] *See id.* (explaining breach of contract cause of action and how Farah "relied on Wells Fargo to act in good faith" to "his detriment").

[52] *EPIS, Inc. v. Fid. & Guar. Life Ins. Co.*, 156 F. Supp. 2d 1116, 1124 (N.D. Cal. 2001) (modifying punctuation) (citing *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (1968)).

[53] *Cnty. of Alameda v. Superior Court*, Case No. A121590, 2009 WL 2993813, at *5 (Cal. Ct. App. Sept. 21, 2009) (*quoting City of Los Angeles v. Super. Ct. of L.A. Cnty.*, 51 Cal. 2d 423, 433 (1959)); *But see Copeland v. Baskin Robbins U.S.A.*, 96 Cal. App. 4th 1251, 1255-60 (2002) (holding that in circumstances where essential elements have been agreed to by the parties, agreements to negotiate may be enforceable).

9

Case No. 5:13-cv-01127-PSG
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
For the Northern District of California

tender requirement.  To challenge the foreclosure proceedings in this case, Farah's complaint was required to have satisfied the tender rule or qualify for a recognized exception.  The amended complaint does not and therefore the breach of contract fails on this additional, independent ground.

Because the court is convinced additional amendment of this claim would be futile, Farah's claim for breach of contract is DISMISSED with prejudice.

**E.     Breach of Good Faith, Fiduciary Duty, and Fair Dealing**

In order "to state a claim for breach of an implied covenant of good faith and fair dealing, the specific contractual obligation from which the implied covenant of good faith and fair dealing arose must be alleged."[54]  "This is because it is universally recognized that the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract."[55]  Accordingly the "prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract."[56]  The court agrees that, as a matter of law, because there was no underlying contract between Farah and Defendants, Farah's claim for breach of good faith and fair dealing fails.  As to the breach of fiduciary duty claim, Farah has alleged no facts to indicate why a fiduciary relationship exists between the parties.[57]

---

[54] *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1268 (C.D. Cal. 2010) (*quoting Inter-Mark USA, Inc. v. Intuit, Inc.*, Case No. 3:07-cv-04178-JCS, 2008 WL 552482, at *6 (N.D. Cal. Feb. 27, 2008)).

[55] *Id.* (citations and quotations omitted).

[56] *Id.* (citations and quotations omitted).

[57] *See Fortaleza v. PNC Fin. Servs. Grp., Inc.*, 642 F. Supp. 2d 1012, 1025 (N.D. Cal. 2009) (*quoting Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1093 n.1, 1096 (1991) ("The relationship between a lending institution and its borrower-client is not fiduciary" in nature and, "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.")); *Oaks Management Corp. v. Superior Court*, 145 Cal. App. 4th 453, 466 (2006) (holding that absent special circumstances, a loan transaction is at arms-length and there is no fiduciary relationship between the borrower and lender).

Case No. 5:13-cv-01127-PSG
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

The court also cannot accept that heightened fiduciary duties purportedly inlaid onto a mortgage agreement permit Farah to circumvent the tender rule's requirements.  Farah's challenge to the foreclosure of his home required him to tender the outstanding balance on the home.  He did not.  His additional breach of good faith, fiduciary duty, and fair dealing claim therefore fails on this additional, independent ground.

Because the court is convinced additional amendment would be futile, Farah's claims of breach of good faith, fiduciary duty, and fair dealing are all DISMISSED with prejudice.

**IT IS SO ORDERED.**

Dated: January 23, 2014

PAUL S. GREWAL
United States Magistrate Judge

Case No. 5:13-cv-01127-PSG
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
For the Northern District of California